The STATE of Ohio, Appellee,

v.

GILLIAM, Appellant.

[Cite as *State v. Gilliam*, 192 Ohio App.3d 145, 2011-Ohio-26.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 09CA0075.

Decided Jan. 7, 2011.

</div>

Stephen Schumaker, Clark County Prosecuting Attorney, and Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

Sha D. Hinds–Glick, for appellant.

GRADY, Judge.

{¶ 1} On March 19, 2009, defendant-appellant, Gary Wayne Gilliam, purchased a quantity of powdered cocaine from a police informant. Gilliam was promptly arrested by officers who had set up the controlled buy. On July 22, 2009, following a jury trial, Gilliam was convicted of possession of cocaine in an amount equal to or exceeding 1,000 grams, R.C. 2925.11(A), which is a first degree felony for which a maximum prison term is mandated. R.C. 2925.11(C)(4)(f). Gilliam was sentenced pursuant to law to the mandatory prison term of ten years and additional financial sanctions. He now appeals from his conviction.

FIRST ASSIGNMENT OF ERROR

{¶ 2} "The trial court erred in admitting the videotape recording of a meeting allegedly between the informant and appellant when the informant had the sole knowledge of the recording and was not called to authenticate the recording and provide proper foundation as required by Ohio Rules of Evidence 901(A) in violation of the Due Process Clause of the United States Constitution and Article I, Section 10 of the Ohio Constitution."

{¶ 3} The state offered in evidence a video recording that purportedly depicted a meeting between Gilliam and the police informant on March 13, 2009, which allegedly concerned Gilliam's subsequent purchase of drugs from the informant on March 19, 2009. The video was offered in the state's case in rebuttal, following Gilliam's claim of entrapment. Defendant objected that the video was not admissible absent the testimony of the informant that the video accurately portrays what it shows.

{¶ 4} Motion pictures are admissible in evidence when their relevancy, authenticity, and accuracy of portrayal are established by the laying of an adequate foundation. *DeTunno v. Shull* (1956), 75 Ohio Law Abs. 602, 144 N.E.2d 669, 672. Other forms of video recording are no different.

{¶ 5} The foundational requirements for admissibility of evidence are set out in Evid.R. 901, which states the requirements for authentication or identification of evidence in the alternative. Evid.R. 901(B) states:

{¶ 6} "Illustrations.

{¶ 7} "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

{¶ 8} "(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

{¶ 9} " * * *

{¶ 10} "(5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

{¶ 11} Gilliam argues that the trial court erred in admitting the video recording in evidence because the state failed to offer it through the testimony of the informant that the video recording was an accurate depiction of his meeting with Gilliam. That contention relies on Evid.R. 901(B)(1).

{¶ 12} The state argues that a proper foundation was nevertheless laid through the testimony of two law-enforcement officers who stated that they are familiar with defendant's voice and that his voice is heard on the video recording. One of the two officers further testified to the same effect concerning the informant's voice. That contention relies on Evid.R. 901(B)(5). The trial court admitted the video in evidence on that basis.

{¶ 13} Professor Weissenberger writes that when a recorded voice is sought to be identified, "the proponent should offer foundational testimony to the effect that the recording is an accurate reproduction of the voice in question or that the recording equipment is of such quality as to assure accurate reproduction." Weissenberger's Ohio Evidence Treatise (2009 Ed.), Section 901.71.

{¶ 14} The state offered the video through the testimony of Detective Andrew Reynolds of the Clark County Sheriff's Department and Charlie Stiegelmeyer, who is employed by the Attorney General of Ohio as a narcotics investigator. Each testified that he is familiar with defendant's voice and that defendant's voice is heard on the video recording. Detective Reynolds likewise identified the police informant's voice.

{¶ 15} Detective Reynolds further testified that the video recording was made using a camera disguised as a pen that he provided to the informant and that the informant carried in his shirt pocket. However, neither Detective Reynolds nor any other witness testified that the device produces an accurate video and/or audio recording. It appears from the testimony that was offered that the recording device failed to produce a video record of part of the meeting when the informant wore a jacket that covered the "pen" in his pocket. The evidence of voices alone that the state offered concerned the audio portion of the recording produced during those times.

{¶ 16} Defendant objected that the video was inadmissible absent the testimony of the informant shown in it. The trial court admitted the video pursuant to Evid.R. 901(B)(5) because the two officers could identify the voices heard on it. Defendant did not object that the video was not admissible pursuant to Evid.R. 901(B)(5) because the state failed to offer foundational evidence of its

accuracy. Therefore, any error in admitting the evidence for that reason is forfeited. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306. Criminal plain error is not shown. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

{¶ 17} The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 18} "The trial court erred in finding defendant guilty against the manifest weight of the evidence."

{¶ 19} Defendant argues that his conviction for possession of powdered cocaine in an amount equal to or exceeding 1,000 grams is against the manifest weight of the evidence because the evidence the state offered was not conclusive of the weight of the cocaine he purchased.

{¶ 20} Unlike a sufficiency-of-the-evidence claim, which involves an adequacy test, but which defendant does not make, "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.' * * * 'Weight is not a question of mathematics, but depends on its *effect in inducing belief.*' (Emphasis added.)" *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) 1594. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id., citing *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶ 21} R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." The degrees of the offense for a violation of R.C. 2925.11(A) when the controlled substance is cocaine are set out in R.C. 2925.11(C)(4). They range from a fifth-degree felony for the possession of cocaine in any amount, R.C. 2925.11(C)(4)(a), to a first-degree felony for possession of cocaine in an amount equal to or exceeding 1,000 grams, R.C. 2925.11(C)(4)(f). That latter section requires the court to impose the maximum term for a first-degree felony of ten years. R.C. 2929.14(A)(1).

{¶ 22} The police informant offered defendant his choice of two wrapped packages of a similar size containing cocaine. Defendant chose one of the two and paid the asking price. The police lab technician who verified that both packages contained powdered cocaine testified that together, the two wrapped packages weighed 2,375.20 grams. The technician did not testify concerning the weight of the package defendant purchased or the weight of the cocaine the package contained absent its wrappings.

{¶ 23} Agent Stiegelmeyer testified that he obtained the two wrapped packages of powdered cocaine from the Warren County Drug Task Force and that when he obtained the packages, each was weighed, and each package weighed in excess of 1,000 grams. From the record, it appears that the state's witnesses were reluctant to unwrap the package of drugs defendant purchased in order to determine the weight of the cocaine the package contained because it had been borrowed from another law-enforcement agency for purposes of the controlled buy.

{¶ 24} Defendant argues that the jury lost its way when it relied on Agent Stiegelmeyer's testimony to conclude that the weight of the cocaine defendant purchased was equal to or in excess of 1,000 grams. Defendant contends that even were the two packages of equal weight, which would mean that each weighed 1,187.6 grams according to the lab technician's testimony, the weight of the wrappings of the package he purchased, which included duct tape, could permit the actual net weight of the cocaine in the package to be less than 1,000 grams.

{¶ 25} Defendant was convicted of a violation of R.C. 2925.11(A), in that he possessed cocaine in an amount equal to or exceeding 1,000 grams. R.C. 2925.11(C)(4)(f). To find defendant guilty of that degree of the offense beyond a reasonable doubt, the jury was required to find from the evidence that the amount of cocaine defendant possessed satisfied those weight requirements, not that the wrapped package containing the cocaine that defendant possessed satisfied those weight requirements.

{¶ 26} We find that the jury's verdict is not supported by the greater amount of the credible evidence and is therefore against the manifest weight of the evidence, because the jury necessarily speculated to find that the weight of the cocaine inside the package defendant purchased was equal to or in excess of 1,000 grams. The error affected the sentence that the court imposed pursuant to R.C. 2925.11(C)(4)(f). Because the sentence is a part of the court's judgment of conviction, Crim.R. 32(C), we necessarily must reverse defendant's conviction for a violation of R.C. 2925.11(A).

{¶ 27} The second assignment of error is sustained.

THIRD ASSIGNMENT OF ERROR

{¶ 28} "The defendant's right to counsel under the Sixth Amendment of the Constitution, as incorporated to the states via the Due Process Clause of the Fourteenth Amendment, was violated by ineffective assistance of counsel."

{¶ 29} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's

performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id.; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Further, the threshold inquiry should be whether a defendant was prejudiced, not whether counsel's performance was deficient. *Strickland.*

{¶ 30} Defendant's trial counsel sought leave of court to withdraw at the beginning of the first day of trial. Counsel represented that defendant had retained new counsel and that he had been unable to interview two potential witnesses identified by defendant. Counsel suggested that continuance of another trial that was scheduled to begin the day before prevented him from interviewing those potential witnesses. That failure, defendant now argues, constituted ineffective assistance of counsel.

{¶ 31} It seems counterintuitive to suggest that a continuance of another trial somehow impaired counsel from meeting his obligation to defendant in this case. Nevertheless, the record fails to indicate who those two witnesses were that counsel failed to interview or what their testimony would have been. Absent that, we cannot find that the prejudice prong of *Strickland* is satisfied. The third assignment of error is overruled.

### Conclusion

{¶ 32} Having sustained defendant's second assignment of error, we will reverse and vacate the sentence the trial court imposed and remand the case to the trial court for a new trial.

Judgment reversed
and cause remanded.

BROGAN and FROELICH, JJ., concur.